**UNITED GAS PIPE LINE COMPANY,
Petitioner,**

v.

**FEDERAL POWER COMMISSION,
Respondent.**

**Memphis Light, Gas & Water Division,
Intervenor (two cases).**

**Nos. 21872 and 21958.**

United States Court of Appeals
Fifth Circuit.

Jan. 10, 1968.

Rehearings Denied March 1, 1968.

See also, 5 Cir., 350 F.2d 689.

Thomas Fletcher, Houston, Tex., for petitioner.

Peter H. Schiff, Sol., Richard A. Solomon, Gen. Counsel, Arnold D. Berkeley, Atty., Washington, D. C., for respondent.

James R. Lacey, Newark, N. J., for Intervenor Public Service Elec. & Gas Co.

George E. Morrow, Memphis, Tenn., Reuben Goldberg, Washington, D. C., for Intervenor Memphis Light & Gas.

Robert W. Maris, Philadelphia, Pa., for Intervenor United Gas Imp. Co.

Thomas F. Brosnan, George J. Meiburger, Washington, D. C., Robert O. Koch, Gen. Counsel, William E. Feldhaus, Owensboro, Ky., for Intervenor Texas Gas Transmission Co.

Before RIVES, GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

In this matter, which involves the fixing of just and reasonable rates and charges for a natural gas company by

the Federal Power Commission, the question for decision is whether the Commission made a proper allowance for federal income taxes in calculating United Gas Pipe Line Company's (United's) cost of service in the test period involved.

The matter has been before us before when we held that the Commission's order used an incorrect income tax rate in computing cost of service in fixing United's gas rates and should, therefore, be vacated and set aside. (357 F.2d 230 (1966).) In our former decision we relied on the Tenth Circuit's holding in Cities Service Gas Company v. Federal Power Commission, 10 Cir., 1964, 337 F.2d 97, a similar case, "that the tax allocation was contrary to the requirement which Congress had imposed."

Thereafter, on March 13, 1967, the Supreme Court reversed this Court's decision and remanded the case "for further proceedings consistent with this opinion." [1]

In its opinion the Supreme Court said: "Another matter deserves some comment. It is said here that the Commission, in applying its tax allowance formula, erroneously failed to recognize and to take account of the fact that United has both jurisdictional and nonjurisdictional activities and income. Although this is a matter which might affect the results achieved in application of the Commission's formula, it is one to which the Court of Appeals has not addressed itself, and we think it appropriate for the issue to be raised there if the parties are so inclined." (87 S.Ct. at 1009.)

United has filed its motion for consideration and decision of the issue remanded by the Supreme Court, which motion is opposed in all respects by the Federal Power Commission and Memphis Light, Gas & Water Division, intervenor, and is now before us for decision.

United Gas Pipe Line Company (United) is a natural gas transmission company in interstate commerce and a member of an affiliated group of companies. United Gas Corporation wholly owns United and is a gas distribution company subject to state and local regulation. There are two other wholly owned subsidiaries of United Gas Corporation in the affiliated group, namely, Union Producing Company (Union), a domestic oil and gas producer whose interstate sales of gas are subject to Federal Power Commission jurisdiction, and United Overseas Production Company (Overseas), which is engaged in oil exploration in foreign countries. The affiliated group, including United, during the five-year representative period, 1957–1961, elected to file consolidated federal income tax returns (as authorized by the Internal Revenue Code of 1954, 26 U.S.C. § 1501) because on such a basis consolidated losses served to reduce consolidated income and two members of the group, Union and Overseas, had substantial net losses over the five-year representative period. If each company of the affiliated group had filed separate returns instead of the consolidated returns actually filed, the total tax for the group would have been substantially larger than was paid on a consolidated basis. Using a formula which the Commission developed in Cities Service Gas Compny, 30 FPC 158, the Commission allowed United $9,940,892 for federal income taxes in the test year instead of $12,099,662 claimed by United as part of its cost of service. (See Federal Power Commission v. United Gas Pipe Line Company, 386 U.S. 237, 87 S.Ct. 1003, 1005, 18 L.Ed.2d 18 (1967).) The amount allowed by the Commission was allocated by use of a so-called "consolidated effective tax rate" of 50.04% rather than the amount claimed by United calculated at the statutory rate of 52% in effect when the record was closed. United's position is that the Commission erroneously applied its own tax allocation formula—the one which it adopted in the *Cities Service Gas Company* case—to United, because it ignored the fact that the Commission had juris-

---

1. Sub nom. Federal Power Commission v. United Gas Pipe Line Co., et al., 386 U.S. 237, 87 S.Ct. 1003, 18 L.Ed.2d 18 (1967).

diction over less than 50% of United's business, and that United had taxable income of over $47,000,000 from unregulated operations (by any federal or state agency) in the representative period to offset net unregulated oil tax deductions and losses amounting to less than $4,000,000, so that there would thus be no tax deductions and losses to apply against United's income from jurisdictional business.

United states in its motion (p. 8) that it will demonstrate "that the *wholly unregulated, FPC-nonjurisdictional* oil tax losses and deductions of Union and Overseas, when applied to that portion of United's taxable income from operations *wholly unregulated by any Federal or state agency,* leaves *no excess* of losses available to diminish United's FPC-jurisdictional taxable income. The result is that the Federal income tax allowance in United's cost of service should be computed, by application of the statutory corporate tax rate to United's FPC-jurisdictional taxable income."

The Commission and Memphis respond: (1) That the question presented by the motion is not open for decision in this Court because the issue of the proper application of the Commission's consolidated tax allowance formula was not raised by United in its petition for rehearing before the Commission and, therefore, cannot be considered by this Court; and (2) the Commission reasonably treated United as a wholly regulated operation under its Cities Service formula, as opposed to United's contention that "the Supreme Court realized the significance of FPC failure to utilize United's substantial non-regulated taxable net income, as a part of the income against which non-regulated losses must be offset first" when it remanded this case.

## I.

At the outset we must dispose of the question that the issue of the proper application of the Commission's consolidated tax allowance formula was not raised by United in its petition for rehearing to the Commission and, therefore, may not be considered here. Section 19(a) of the Natural Gas Act (15 U.S.C. § 717r(a) requires that the application for rehearing specify the grounds upon which it is based, and Section 19(b) of the Act (15 U.S.C. § 717r(b)) provides that on review by this Court no objection to the Commission's order shall be considered unless such objection shall have been urged before the Commission in the application for rehearing.[2]

The Commission and Memphis urge that United had not previously challenged the manner in which the Commission applied the consolidated tax allocation formula and that United's assignment of error in its application for rehearing was only to the authority of the Commission to apply the formula rather than to the application itself.

We have examined United's specification of error in its application for rehearing to the Commission and find the contentions of the Commission and Memphis to be without merit. In United's specification of error it alleged in pertinent part the following:

"The Commission erred in adopting and applying to United an effective tax rate resulting from the so-called effect of the consolidated return."

United also averred in its application for rehearing to the Commission:

"United respectfully says that the Commission further erred in directing the computation of such tax matters in connection with the decision and opinion of the Commission in *Cities Service Gas Company.* * * * United shows, as the Commission of course knows, that the Cities Service Opinion is presently pending before the courts for judicial review as to the validity of such directed tax computations and the authority of the

---

2. These requirements have been enforced in several cases; see, e.g., Wisconsin v. Federal Power Commission, 373 U.S. 294, 83 S.Ct. 1266, 10 L.Ed.2d 357 (1963); Sunray Mid-Continent Oil Co. v. Federal Power Commission, 364 U.S. 137, 80 S. Ct. 1405, 4 L.Ed.2d 1623 (1960).

Commission so to apply them. United shows that the ultimate final judicial determination on the merits of such issues in the Cities Service case will be dispositive of the Commission's order here and United's exceptions and objections thereto."

 Of course, the principal force of United's argument was against the authority of the Commission to adopt a consolidated tax allocation formula. But the application thereof was also challenged in United's rehearing pleadings and is sufficiently detailed and specific to permit review by this Court.[3] To hold otherwise would be to make pleading an end unto itself. It is difficult to believe that the Supreme Court would have remanded this case to us for further proceedings if the Commission and Memphis are correct in their opposition to the motion on this ground. Though the Supreme Court did not specifically pass on the question, its remand of the case is a definite indication of its view.

## II.

The approved FPC-Cities Service tax allocation formula provides that the proper method to be applied in computing the federal income taxes to be included in the cost of service of a regulated company where that company has joined in a consolidated tax return with affiliates is: (1) separate the companies into regulated and unregulated groups, (2) determine the net aggregate taxable income of each group, and (3) apportion the net total consolidated tax liability over a representative period of time between the two groups, and among the companies in the regulated group, on the basis of their respective taxable incomes.

In applying this formula the Commission found that "United is largely a regulated company, and we shall designate it as such for the purpose of these computations." (31 FPC at 1190.) This finding was made despite the fact that a computation based on facts of record shows that of the total taxable income of United for the five-year representative period ($105,290,983), 44.67% thereof is FPC jurisdictional, 9.77% is regulated by local agencies, and 45.56% is wholly unregulated by the FPC or local agencies. If the FPC-jurisdictional percentage (44.67%) is added to the local agencies-jurisdictional percentage (9.77%), the total of 54.44% is the amount of United's taxable income derived from regulated activities.

In its response to United's present motion the Commission contends that it "reasonably treated both United and Cities Service Gas Company as wholly regulated for the purpose of the consolidated tax allocation formula." But the Commission further contends that United's direct sales, which are not under either FPC or local jurisdiction, are to a large extent subject to the Commission's certificate jurisdiction with respect to transportation. United responds that its wholly unregulated, wholly uncertificated direct sales amount to at least $29,460,417, more than adequate to absorb the net taxable losses of Union and Overseas totaling $3,893,980.

 The Commission's certificate jurisdiction is not the same as its rate jurisdiction and the Commission's argument in this respect is invalid since this is a rate case which we are considering and regulation here is *rate* regulation.

---

3. United also states in its brief in support of the present motion (p. 3) that the Commission made this same argument during oral argument in the Supreme Court and nevertheless the Supreme Court remanded the case for determination of the fact issue of the so-called erroneous failure of the Commission to recognize and to take account of the fact that United has both jurisdictional and nonjurisdictional activities and income—a matter which might affect the results achieved in the application of the Commission's formula.

See also Ex. D of United's motion where the parties in the agreement of rate settlement filed with the Commission (see 32 FPC 1515) specifically reserved the question of the "application and use of the federal statutory corporate income tax rate as opposed to the consolidated effective tax rate with respect to United."

Memphis contends that for purposes of applying the formula as between regulated and nonregulated companies, the Commission was justified in holding United as a whole to be a regulated company because it is engaged in regulated business "to an extent," which justifies the classification; that since the corporate entity is the taxpayer, classification of the entity as a whole in one category is appropriate; and that such classification of United as "regulated" does not mean that tax savings are used only for business under FPC jurisdiction since the FPC's use of its formula allocated United's total cost of service, including the tax allowance, between jurisdictional and nonjurisdictional business.

United contends that if the Commission would correctly apply its tax allocation formula here by dividing United, a mixed company (i. e. one having both regulated and nonregulated income into regulated and unregulated components), the *unregulated* component would be sufficient to absorb all *unregulated* net tax losses (those of Union and Overseas), leaving nothing remaining to be apportioned to regulated companies and regulated components.

The Supreme Court remanded this case because this Court had not addressed itself to United's argument that "the Commission, in applying its tax allowance formula, erroneously failed to recognize and to take account of the fact that United has both jurisdictional and nonjurisdictional activities and income." (87 S. Ct. at 1009.) If the Supreme Court had felt there was no merit in United's argument, it hardly would have been worth while to remand the matter to us for further consideration. The Supreme Court thus recognized that a separation of United's jurisdictional and nonjurisdictional income "might affect the results achieved in application of the Commission's formula." (87 S.Ct. at 1009.)

██ The Supreme Court recognized in its opinion a fundamental principle of public utility regulatory law when it said: "Ratemaking is, of course subject to the rule that the income and expense of unregulated and regulated activities should be segregated." (87 S.Ct. at 1007.) The Court further said of the FPC-Cities Service formula: "Under its formula, the net losses and net income of unregulated companies are first set off one against the other, and the tax savings made possible by losses of unregulated enterprises are thus first allocated to the unregulated companies. Only if 'unregulated' losses exceed 'unregulated' income is the regulated company deemed to have enjoyed a reduction in its taxes as a result of the consolidated return." (87 S.Ct. at 1008.)

The fundamental rate-making principle adverted to had heretofore been clearly expressed by the Supreme Court in Panhandle East. P. L. Co. v. Federal Pow. Com'n, 324 U.S. 635, 641, 65 S.Ct. 821, 825, 89 L.Ed. 1241 (1945), when the Court said: "We agree that the Commission must make a separation of the regulated and unregulated business when it fixes the interstate wholesale rates of a company whose activities embrace both. Otherwise the profits or losses, as the case may be, of the unregulated business would be assigned to the regulated business and the Commission would transgress the jurisdictional lines which Congress wrote into the Act."

The Commission followed the *Panhandle Eastern* principle of separating the regulated and unregulated business for the purpose of allocating costs between jurisdictional and nonjurisdictional sales of United, but ignored it in computing the tax allowance.

As to United's present motion, the Supreme Court must have listened to United's argument for it remanded the case to us to determine whether the tax allocation formula had been erroneously applied to United, which has both jurisdictional and nonjurisdictional activities and income. We look to the Commission's *Cities Service* decision itself (30 FPC 158), where the tax allocation formula was conceived, to determine whether there is merit in United's contention.

In the *Cities Service* case, the Commission was determining rates of Cities

Service Gas Comapny in a cost-of-service study in which the single question which remained for decision was whether there had been a proper allowance for federal income taxes in the test period involved. The Gas Company was a member of the Cities Service system whose parent company, Cities Service Company, through its wholly owned subsidiary, Empire Gas and Fuel Company, owned all the outstanding stock of the Gas Company and altogether, directly or indirectly, owned the stock of thirty-seven corporations. The parent filed a consolidated tax return for a number of years in some of which the Gas Company was included. The parent company allocated the burden of the consolidated tax payments among its various subsidiaries and the regulated companies, such as the Gas Company, were charged 52% (the statutory rate) of their net taxable income while the remainder of the consolidated tax was then allocated among the nonregulated subsidiaries showing a profit in proportion to their respective taxable incomes. Cities Service thus contended that the Gas Company was entitled to an item of expense in the cost of service for federal income tax equal to 52% of its net income. The Commission's staff disagreed and employed a formula for determining the Gas Company's federal income tax in its cost of service which was derived by dividing the consolidated tax paid by the Cities Service system by the total taxable income of all the profit-making affiliates computed separately for the years involved. Though the Commission's examiner agreed with Cities Service, the Commission itself did not agree with Cities Service, its examiner or its staff. It found the staff's approach to possess "a quality of artificiality and instability which renders it unsatisfactory for ratemaking purposes." (30 FPC at 162.) It said that the basic error in the position of Cities Service is that it claimed an amount of federal income taxes in the Gas Company's cost of service on the basis of a hypothetical figure which the Gas Company would have paid if it were a separate company but which

it did not pay because of its participation in the filing of a consolidated return with its other affiliates, and that to accept the Cities Service position would be to convert a hypothetical tax payment into a prudent operating expense in fixing jurisdictional rates. It said further (30 FPC at 162):

"However, we agree with Cities Service that the fundamental rate making principle governing our disposition of this issue requires a separation between regulated and unregulated costs and revenues. This principle controls our allocation of other costs which are jointly incurred by regulated and unregulated companies, or departments within the same company, and is controlling here. If we were to allocate the consolidated system tax return among all profit companies including those in whole or part engaged in unregulated activities, there would be no sound reason for refusing to fix jurisdictional rates at a level sufficient to make up any real losses these companies might suffer."

Before announcing its tax allocation formula, the Commission said that additionally there was the problem that "There are certain companies in the Cities Service system a portion of whose business is subject to regulation. The taxable income of these companies should first be allocated into regulated and unregulated categories." But it found that Cities Service had failed "to present any evidence upon which to make such an allocation." Nevertheless, it made an appropriate allocation of the regulated and unregulated taxable income of two of the system's mixed companies, Cities Service Oil Company and Cities Service Production Company, based upon evidence presented in another rate case before it, of which it took official notice. Appendix B to its opinion demonstrates how it treated the regulated portion— which it had calculated—of Cities Service Oil Company. Cities Service Production Company had no taxable income and was not considered, therefore, in the computation of Gas Company's federal

income taxes for cost-of-service purposes. Then the Commission said: "Having made these adjustments * * *." it detailed a formula for federal income tax allocation purposes. (30 FPC at 164.)

In the present case United asks the Commission to apply its formula in the same manner as it did in the *Cities Service* case, that is, to separate the regulated and unregulated components of United as it did the production company affiliates in the Cities Service system.

The Commission's response in opposition to United's motion is that the Commission did not divide or separate the pipe line company, whose rates were being determined, into regulated and unregulated components. We find the reason why it did not stated in its opinion: "Cities Service * * * failed to present any evidence upon which to make such an allocation." (See 30 FPC at 163.)[4]

Unlike the *Cities Service* case, there is ample evidence of record in the present case by which an allocation may be made

and a separation of the regulated and unregulated components of United calculated. If the Commission will make the adjustments in this case which it made in the *Cities Service* case and then apply its formula, having in mind the language of its opinion in that matter that "the fundamental rate making principle governing our disposition of this issue requires a separation between regulated and unregulated costs and revenues," a proper tax allocation for federal income taxes can be made for use in the cost of service of United within the principles determined by the Supreme Court when it reviewed our original decision.[5]

■ We hold, therefore, that in this case, in making the federal income tax allowance for cost-of-service purposes, the Commission must divide the income of United, a mixed company, into regulated and unregulated components, and offset all unregulated net tax losses against unregulated income. It is apparent that income from the unregulated component of United is sufficiently large to absorb all such net tax losses [6] and no

---

4. United contends that the Commission in its petition for certiorari to the Supreme Court in this case conceded that it had not properly applied the Cities Service formula. The Commission responds (p. 9, n. 9) by quoting from its petition the following:

 "There may indeed be problems in the application of the particular formula used by the Commission in this case, a formula which may result in allocating the entire tax saving resulting from losses on unregulated activities to the regulated members of the consolidated group. These problems need not be faced here, however, since, as noted in the text, the disagreement of the court below was not with the details of the allocation method but with the principle that allocation is under any method permissible."

 We agree that the Commission did not concede application of the formula, but it did note that there might be "problems in the application of the particular formula used by the Commission in this case." Those problems are soluble on a close reading of the Commission's own Cities Service opinion.

5. The Commission's opinion in the present case (31 FPC 1180 at 1191) indicates

that the record would permit an arithmetical allocation of Union's taxable income between its regulated and nonregulated business. However, such allocation was not made because the Commission said it would make no difference because Union has a net taxable loss over the representative period and no part of the consolidated tax would be allocated to it whether it be classified as regulated or nonregulated.

6. Both the Commission and Memphis dispute that all of the net taxable losses of United and Overseas, totaling the sum of $3,893,980, especially as to Union's losses, were unregulated losses (Commission reply brief p. 9, n. 10), the Commission's brief averring that "Since the Commission concluded that all of the system's income came from the regulated group (United and Corporation), there was no occasion to determine if Union could be divided into regulated and unregulated components within the meaning of the allocation formula."

 Memphis in its reply brief (p. 5, n. 3) states: "In any event, the tax losses [i. e. of Union] were not attributable entirely to non-jurisdictional, unregulated oil business." United responds that "There is * * * no real question that these

excess remains to reduce the regulated taxable income of United.

Motion of United for consideration and decision of the issue remanded by the Supreme Court is

Granted.

tax losses [i. e. Union and Overseas] arose from non-jurisdictional oil activities."

This is a matter which the Commission should resolve when its final order, consistent with this opinion, is rendered.